

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

---

JPL:AAS                                    *271 Cadman Plaza East*
F.#2008R00631                              *Brooklyn, New York 11201*

                                           January 17, 2012

**By ECF and Hand**

The Honorable Sandra L. Townes
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

                    Re:  United States v. Emmanuel Tavarez
                         Criminal Docket No. 08-242 (S-8)(SLT)

Dear Judge Townes:

            The government respectfully submits this letter in
response to the defendant Emmanuel Tavarez's sentencing
submission dated January 3, 2012.  In his submission, the
defendant (1) objects to the calculation of the applicable United
States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range
contemplated in the Presentence Investigation Report (the "PSR");
and (2) moves for a below-Guidelines sentence on the basis of
attempted cooperation and duress.  For the reasons set forth
below, the government opposes the defendant's objections to the
PSR and the defendant's motion for a non-Guidelines sentence, and
respectfully submits that the Court should impose a sentence
within the Guidelines range of 386 to 449 months.  The
defendant's sentencing is scheduled for January 19, 2012 at 2:00
p.m.

I.    The Defendant's Offense Conduct

            In early 2008, the Drug Enforcement Administration
("DEA") began to investigate reports of a robbery crew that
targeted narcotics traffickers.  The investigation revealed that
crew members posed as law enforcement officers, staged fake
"arrests" of the traffickers, using fake arrest and search
warrants, and then forcibly seized the traffickers' contraband.
As necessary, members of the crew restrained targets and
bystanders with handcuffs, rope, or duct tape.  In addition, crew
members often brandished firearms and physically assaulted
victims.  Crew members would sell any stolen drugs and divide the
proceeds from these sales.  (PSR ¶¶ 9-10).

        The defendant, who during all relevant times was a
police officer with the New York City Police Department (the
"NYPD"), participated in at least eight separate robberies and
attempted robberies as a member of the robbery crew.  During
these robberies and attempted robberies, the defendant acted as a
lookout and, on at least one occasion, entered a private
residence with other members of the robbery crew.  The defendant
also provided equipment and paraphernalia to members of the
robbery crew, including replicas of his own shield, handcuffs,
and NYPD raid jackets.  On several occasions, the defendant
permitted crew members to borrow his NYPD equipment, including
his NYPD firearm.  (PSR ¶¶ 19, 46).

        The robberies in which the defendant directly
participated included:

1.   The theft during the summer of 2003 of between 90 to 150
     kilograms of cocaine from a tractor trailer truck in Long
     Island, for which robbery the defendant acted as a lookout
     and received approximately four kilograms of cocaine;

2.   The attempted robbery during 2003 of 38 kilograms of cocaine
     from an apartment located on Laurel Hill and 182nd Street in
     the Bronx, for which attempted robbery the defendant
     remained outside the premises in order to divert any law
     enforcement that should arrive near the scene of the
     robbery;

3.   The attempted robbery during the winter of 2003 or 2004 of a
     cocaine stash from an apartment located in the vicinity of
     198th Street and Marion Avenue in the Bronx, for which
     attempted robbery the defendant performed surveillance;

4.   The robbery in 2004 of two kilograms of cocaine from a
     female courier at 615 West 173rd Street in Manhattan, during
     which robbery crew members abducted the courier into a van
     where the defendant was waiting while armed with a firearm;

5.   The attempted robbery in 2004 of one kilogram of heroin from
     a drug trafficker in the Bedford Park section of the Bronx,
     during which attempted robbery the defendant performed
     surveillance and, while identifying himself as a member of
     law enforcement, directed a pedestrian to vacate the area;

6.   The robbery on September 2, 2005 of approximately $200,000
     from a residence in Bridgeport, Connecticut, during which
     robbery the defendant entered the residence, identified

himself as a member of law enforcement, and brandished a firearm;

7.   The attempted robbery in 2006 or 2007 of a stash house in Philadelphia, Pennsylvania, during which attempted robbery the defendant performed surveillance; and

8.   The attempted robbery in January 2008 of a stash house in the vicinity of Edward L. Grant Avenue and Jerome Avenue in the Bronx, during which attempted robbery the defendant performed surveillance.

(PSR ¶¶ 12-27).

In May 2010, a grand jury in the Eastern District of New York returned a three-count superseding indictment charging the defendant and others with: (1) Hobbs Act robbery conspiracy, in violation of 18 U.S.C. § 1951(a) (Count One); (2) conspiracy to distribute heroin, cocaine, MDMA, and marijuana, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(I), 841(b)(1)(A)(ii)(II), 841(b)(1)( C), and 841(b)(1)(D) (Count Two); and (3) using and carrying a firearm in relation to the robbery and drug trafficking charges, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Three).[1]

On April 25, 2011, during jury selection in his trial, the defendant pleaded guilty to all counts charged against him before the Honorable Viktor V. Pohorelsky, United States Magistrate Judge.  During the plea allocution, the defendant falsely denied possessing a firearm during any of the robberies and falsely stated that he had only acted as a lookout.  On July 5, 2011, at his request, the defendant re-allocuted before Your Honor and admitted that he possessed and brandished a firearm during the robbery in Bridgeport, Connecticut and that his role was not limited to acting as a lookout.  (PSR ¶ 58).

On July 8, 2011, the United States Probation Department ("Probation") disclosed the PSR.  The PSR calculates the applicable Guidelines range as follows.  With respect to Count One, the PSR contemplates an adjusted offense level of 35 as follows: (1) a base offense level of 20; (2) a 4-level enhancement for abduction and physical restraint of a victim; (3) a 1-level enhancement for the object of the offense being the taking of a controlled substance; (4) a 6-level enhancement for a

---

[1]   Two subsequent superseding indictments charged the defendant with the same crimes.

loss amount exceeding $2,500,000; (5) a 2-level enhancement for
abuse of trust; (6) and a 2-level enhancement for obstruction of
justice.  With respect to Count Two, the PSR contemplates an
adjusted offense level of 40 as follows: (1) a base offense level
of 36; (2) a 2-level enhancement for abuse of trust; and (3) a 2-
level enhancement for obstruction of justice.  (PSR ¶¶ 63-76).
The PSR further contemplates that Counts One and Two should be
grouped together, resulting in a combined adjusted offense level
of 40.  (PSR ¶¶ 78-86).  Based on a criminal history category of
I, and the mandatory minimum consecutive sentence of 7 years'
incarceration for Count Three, the applicable Guidelines range is
386 to 449 months of incarceration.  (PSR ¶ 137).  Notably, the
PSR calculates that, because of the defendant's obstruction of
justice through lying to the Court at his guilty plea, the
defendant is not eligible for a reduction for acceptance of
responsibility.  (PSR ¶¶ 59-61).  The government concurs with
this Guidelines calculation.

On January 3, 2012, the defendant filed a letter in
which he makes the following objections to the PSR:

1.    The defendant asserts that, in light of the humiliating
      circumstances attendant to his initial guilty plea, he did
      not commit perjury in falsely stating that he did not
      possess a firearm during any of the robberies and that his
      role was limited to acting as a lookout;

2.    The defendant asserts that, in light of "extraordinary
      circumstances," he should receive a two-point reduction for
      acceptance of responsibility, notwithstanding his false
      statements during his first plea allocution (Def.'s Br. at
      2);

3.    The defendant asserts that a four-level enhancement for
      abduction of a victim is inappropriate because the victim of
      the robbery at 615 West 173rd Street was released after
      being "driven around the block" and "without any injuries"
      (Def.'s Br. at 2); and

4.    The defendant contends that the government cannot prove the
      drug quantities or loss figures "beyond a reasonable doubt"
      and, therefore, the appropriate base level offense should be
      lowered (Def.'s Br. at 2).

Additionally, the defendant asserts that a downward departure is
appropriate because of the defendant's attempted cooperation and
the duress the defendant purportedly suffered at the hands of

other coconspirators.  As discussed below, the defendant's
arguments lack merit and should be rejected.

II.  <u>Discussion</u>

     A.  <u>Objections to the PSR</u>

          1.  <u>Obstruction of Justice and Acceptance of
              Responsibility</u>

          In essence, the defendant asserts that, because of the
humiliating circumstances surrounding his guilty plea, he should
not be held responsible for his false statements to Judge
Pohorelksy made while under oath.  (Def.'s Br. at 2).  However,
the application notes to Guidelines § 3C1.1 make clear that the
defendant's argument lacks any legal support.  Indeed, the
obstruction of justice enhancement applies "if the defendant's
obstructive conduct occurred with respect to the . . .
prosecution, or sentencing of the defendant's instant offense of
conviction" and applies to "providing materially false
information to a judge or magistrate judge."  U.S.S.G. § 3C1.1
cmt. n.1, 4(F).  All of these elements are present in this case.
Indeed, the defendant admitted, while under oath during his
second plea allocution, that his prior sworn statements to Judge
Pohorelsky regarding his participation in the instant robbery
conspiracy were factually incorrect.  Accordingly, an obstruction
of justice enhancement is warranted.  <u>See</u> <u>United States v.
Sweeney</u>, 797 F. Supp. 2d 233, 234 (E.D.N.Y. 2011) (holding that
defendant's false statements to magistrate judge during guilty
plea about role in bank robbery merited a sentencing enhancement
for obstruction of justice).

          Similarly, "[a] reduction for acceptance of
responsibility is generally unavailable to a defendant who
falsely denies, or frivolously contests, relevant conduct that
the court determines to be true."  <u>United States v. McLeod</u>, 251
F.3d 78, 82 (2d Cir. 2001); <u>see</u> <u>United States v. Brown</u>, 321 F.3d
347, 353-54 (2d Cir. 2003) ("Consistent with the Application
Notes, we have held that '[t]he denial of credit for acceptance
of responsibility under § 3E1.1 is usually appropriate when the
court has found that the defendant's offense level should be
increased under § 3C1.1 for obstruction, or attempted
obstruction'" (citing <u>United States v. Reed</u>, 49 F.3d 895, 903 (2d
Cir. 1995))).  Here, the defendant did not initially plead guilty
until the start of jury selection in his own trial and then
offered to the Court materially false statements concerning his
role in the offense.  Accordingly, the defendant should not

benefit from a sentencing reduction for acceptance of responsibility.

            2.    Abduction of a Victim

        The defendant asserts that, as the victim of the robbery at 615 West 173rd Street was only abducted for a brief period of time and released without injury, the sentencing enhancement for abduction is inappropriate.  However, the commentary to the Guidelines defines "abduction" to mean that "a victim was forced to accompany an offender to a different location" and offers as an example "a bank robber's forcing a bank teller from the bank into a getaway car."  U.S.S.G. § 1B1.1 cmt. n.1(A).  See United States v. Kiltinivichious, 210 Fed. Appx. 118, 121-22 (2d Cir. 2006) (unpublished) (holding that the moving of a victim from one part of a parking lot to another part of the parking lot constituted abduction for the purpose of a sentencing enhancement).  Accordingly, an enhancement for abduction is appropriate, even assuming that the victim in this case was only transported "around the block."  (Def.'s Br. at 2).

            3.    Drug Amount

        The defendant contends that the government cannot prove the drug quantities or loss figures "beyond a reasonable doubt" and, therefore, the appropriate base level offense should be lowered for Counts One and Two (Def.'s Br. at 2).  However, the government is prepared to prove, at a Fatico hearing and by a preponderance of the evidence, that the defendant conspired to rob at least 130 kilograms of cocaine, 1 kilogram of heroin, and approximately $200,000.[2]  These amounts are consistent with the findings in the PSR.

      B.    Attempted Cooperation

        The defendant cites his attempts to cooperate as a basis for a downward departure.  However, assistance to government prosecutions that does not result in a Section 5K1.1 motion may not form the basis of a downward departure motion under Section 5K2.0.

_____

        [2]    At a Fatico hearing, the government would present limited evidence as to robberies that, in of themselves, are sufficient to establish Probation's Guidelines analysis.  However, the government would rely on other facts in the PSR that remain otherwise undisputed.

First, "[i]t is well established . . . that a District Court may grant a downward departure under § 5K1.1 based on substantial assistance to the government in an investigation or prosecution only upon motion by the government." United States v. El-Gheur, 201 F.3d 90, 94 (2d Cir. 2000) (citing United States v. Agu, 949 F.2d 63, 67 (2d Cir. 1991) and United States v. Khan, 920 F.2d 1100, 1106-07 (2d Cir. 1990)). Moreover, Section 5K2.0 permits departures only when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into account by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0. As the Second Circuit has noted, "the very existence of § 5K1.1 demonstrates that the sentencing commission clearly considered the question of whether assistance to the government should be taken into account." Khan, 920 F.2d at 1107. Finally, the Second Circuit has repeatedly held that a downward departure pursuant to Section 5K2.0 cannot be based on ordinary assistance to the government in investigating and prosecuting criminal activity. See, e.g., El-Gheur, 201 F.3d at 94; Khan, 920 F.2d at 1107.[3]

Thus, it makes no difference that the defendant may couch a motion for downward departure as an extraordinary acceptance of responsibility rather than substantial assistance. While the Second Circuit has recognized that "a defendant who exhibits a higher degree of contrition than contemplated by § 5K1.1 'may, in an appropriate case, [receive] a downward departure,'" United States v. Rogers, 972 F.2d 489, 493 (2d Cir. 1992) (quoting United States v. Mickens, 926 F.2d 1323, 1332 (2d Cir. 1991)), the circumstances warranting such a departure are limited to those cases where a defendant "realizes his wrongdoing and acts quickly to accept culpability for his crime" – as opposed to those cases where a defendant "only agrees to plead guilty in the face of a forcible arrest and federal prosecution," Rogers, 972 F.2d at 493.

---

[3]     In Khan, the Second Circuit did leave open the possibility that extraordinary acts undertaken by the defendant in the course of assisting the government, but unrelated to the ordinary investigation and prosecution of criminal activity – in Khan, the saving of the life of a confidential DEA informant - might form the basis of a Section 5K2.0 downward departure motion. 920 F.2d at 1107. No such extraordinary circumstances are present here.

Although assistance to government prosecutions that does not result in a Section 5K1.1 motion may not form the basis of a downward departure motion under Section 5K2.0, attempted cooperation may be considered as part of the defendant's history and characteristics.  Indeed, the Second Circuit has held that a district court may consider the history of a defendant's attempted cooperation as part of the § 3553(a)(1) factors.  See United States v. Fernandez, 443 F.3d 19, 34 (2d Cir. 2006) (holding that § 3553(a)(1) encompasses "the history of the defendant's cooperation and characteristics evidenced by such cooperation, such as remorse or rehabilitation").

Here, the defendant admitted his involvement in illegal activity and attempted to cooperate with authorities only after he was already in custody for more than one year in the instant matter and well after his initially scheduled trial date.  That the defendant's efforts failed to yield tangible results does not qualify him for a downward departure under settled case law in this Circuit.  However, under Fernandez, the Court may properly consider the defendant's attempts at cooperation – which were ultimately unsuccessful – under § 3553(a)(1).

B.   Duress

Without offering specifics, the defendant states that, because of "coercion, duress and explicit threats" suffered at the hands of coconspirators, he should be entitled to a downward departure.  However, federal law makes clear that, absent extraordinary circumstances, which are not present in this case, a downward departure on the basis of duress is inappropriate.

Guidelines § 5K2.12 permits a district court to downwardly depart "[i]f the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense."  Id.  The commentary to the Guidelines discourages application of a downward departure on the basis of duress, as duress is "not ordinarily relevant [to] whether a sentence should be outside the applicable Guidelines range."  Id. § 5H1.3 pt. H intro. cmt.  Thus, duress must be present to an "exceptional degree" to warrant a downward departure.  Koon v. United States, 518 U.S. 81, 93-96 (1996).  Specifically, the Second Circuit has held that "the coercion occasioned by a defendant's generalized fear of a third party, based solely on knowledge of that third party's violent conduct towards others rather than on any explicit or implicit threat, is insufficient to constitute the unusual or exceptional circumstances warranting a departure under § 5K2.12." United States v. Cotto, 347 F.3d 441, 446-47 (2d Cir. 2003).

In this case, the defendant's vague and unsupported assertions of unspecified threats and coercion of unnamed coconspirators are insufficient to constitute exceptional circumstances warranting a departure.  Accordingly, the defendant's motion for a downward departure should be denied.

III. <u>Conclusion</u>

For the reasons set forth above, the government respectfully submits that this Court: (1) should deny the defendant's objections to the PSR; (2) should deny the defendant's motions for a downward departure; and (2) should impose a sentence within the Guidelines range of 386 to 449 months.

Respectfully submitted,

LORETTA E. LYNCH
United States Attorney


By:      _____/s/_____
         Alexander A. Solomon
         Assistant U.S. Attorney
         (718) 254-6074

cc:  Clerk of the Court (by ECF)
     Raymond L. Colon, Esq. (via email and ECF)
     U.S. Probation Officer Michelle Espinoza (via email)