UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
EMMANUEL TAVAREZ

              Petitioner,

     -against-

UNITED STATES OF AMERICA

              Respondent.

------------------------------------------------x

**MEMORANDUM AND ORDER**

Case Nos. 1:16-cv-3884-FB
              1:08-cr-242-FB-VMS-22

*Appearances:*
*For the Petitioner*:
ALLEGRA W. GLASHAUSSER
Federal Defenders of New York
One Pierrepont Plaza
16th Floor
Brooklyn, NY 11201

*For the Respondent*:
JACQUELINE M. KASULIS
Acting United States Attorney
Eastern District of New York
By: SYLVIA SCHWEDER
Assistant United States Attorney
271-A Cadman Plaza East
Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

     Petitioner Emmanuel Tavarez pleaded guilty to a three count Superseding

Indictment, charging him with (1) Conspiracy to Commit Hobbs Act Robbery in

violation of 18 U.S.C. § 1951(a) ("Count 1"); (2) Conspiracy to Distribute Heroin,

Cocaine, MDMA and Marijuana in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(i),

(b)(1)(A)(ii)(II), (b)(1)(C) and (b)(1)(D) ("Count 2"); and (3) Use of a Firearm in

Furtherance of a Crime of Violence or Drug Trafficking Crime in violation of 18

U.S.C. § 924(c)(1)(A) ("Count 3"). United States District Judge Sandra L. Townes

1

of the Eastern District of New York sentenced Tavarez to a 216-month term of incarceration on the first and second counts and an 84-month consecutive term of incarceration on the third count.

Tavarez moves to vacate his conviction on the third count, arguing his conviction under 18 U.S.C. § 924(c) is invalid in light of the Supreme Court's holdings in *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Johnson v. United States*, 576 U.S. 591 (2015). He does not challenge the first or second count.

Tavarez's motion is denied.

## I.

The Court assumes familiarity with the record in Tavarez's criminal case and recites only those portions of the record pertinent to the motion before it.

Tavarez is a former New York City Police Department (NYPD) officer who served as a lookout for a robbery crew that targeted narcotics dealers and traffickers. The robbery crew posed as law enforcement officers, carried fake badges, and used falsified warrants to seize money and drugs from its victims. Tavarez provided NYPD equipment to his co-conspirators and entered a victim's home on at least one occasion. He brandished a firearm on that occasion and sometimes carried a firearm while serving as a lookout.

## A.    April 25, 2011 Plea Colloquy

On the eve of trial, with jury selection ongoing, Tavarez announced his intent to plead guilty to all charges. United States Magistrate Judge Viktor V.

Pohorelsky therefore converted his April 25, 2011 jury selection proceeding to a plea colloquy. Tavarez entered a plea of guilty to all three charges, including the § 924(c) firearms charge, without the benefit of a plea agreement. Judge Pohorelsky confirmed Tavarez's competency and that his plea was knowing and voluntary, read Tavarez his rights, and explained both the charges and potential sentencing exposure.

In the course of the colloquy, Tavarez acknowledged that he understood Judge Pohorelsky's explanations of the various charges. Def. Ex. 1 at 30 (**Q.** "Did you understand what I explained about the elements of the various offenses, Mr. Tavarez?" **A.** "Yes sir"). Thus, Tavarez acknowledged his understanding that, to convict him on Count 2, "[the] government would have to prove that the members of the conspiracy, including you, understood that the purpose of [their] conspiracy was to distribute and possess with intent to distribute heroin or cocaine, or both." *Id.* at 27; *see also id.* at 3 (Superseding Indictment). He likewise acknowledged that a plea of guilty to Count 3 relieved the Government of its obligation to prove that "in connection with either the crime charged in Count 1 [Hobbs Act Robbery] or the crime charged in Count 2 [Conspiracy to Distribute Heroin, Cocaine, MDMA and Marijuana] or both, firearms were used and carried by one or more participants in those offenses." *Id.* at 29; *see also id.* at 5 (Superseding Indictment, charging that "Emmanuel Tavarez, together with others, did knowingly and

3

intentionally use and carry one or more firearms during and in relation to. . . (b) a drug trafficking crime, to wit, the crime charged in Count Two, and did knowingly and intentionally possess said firearms in furtherance of said. . . drug trafficking crime"). Finally, he acknowledged his understanding that the Government could bear its burden on Count 3 by showing that he "knew that someone was going to be brandishing and discharging a firearm, [and] that [he] in some way assisted or aided in that enterprise." *Id.* at 30.

When asked to describe the conduct to which he was pleading guilty, Tavarez stated that he "participated with the robbing of drug dealers." *Id.* at 45. Specifically, he stated that the crew robbed its victims "of narcotics, I guess, or money." *Id.*; *see also id.* at 46 (**Q.** "Did you know that the purpose of the robberies was to obtain narcotics and/or money?" **A.** "Yes"). He further acknowledged "that the [stolen] narcotics would in turn. . .be either sold or in some other way distributed." *Id.* at 46. Judge Pohorelsky summarized the factual basis of Tavarez's plea as follows:

> So if I understand you, you served as a lookout understanding. . . that robberies of narcotics would be committed, and that the proceeds of those robberies, that is, the narcotics, would in turn. . . be either sold or in some other way distributed? *Id.*

Tavarez stated "yes" in response to this characterization. *Id.*

Judge Pohorelsky recommended that the Court accept Tavarez's plea.

**B.     July 5, 2011 Re-Allocution**

4

On July 5, 2011, Tavarez appeared before Judge Townes and requested permission to re-allocate to Count 3 of the Superseding Indictment. The purpose of the re-allocution was "to make sure the record is clear in terms of [Tavarez's] involvement with the conspiracy," and his counsel emphasized that Tavarez did not wish to withdraw his plea. *Id.* at 72; *see also id.* at 76-7 ("So we would join the Government in not asking that the plea be vacated"). On the contrary, by re-allocuting, Tavarez wished to clarify "with respect to the 924(c), [that he] actually possessed a firearm." *Id.* at 74. At no point was the April 25 plea withdrawn.

Tavarez proceeded to "reaffirm" his pleas to Counts 1 and 3. *Id.* at 79-83 (reaffirming pleas). Notably, Tavarez clarified that he actually possessed a firearm at various times during the conspiracy and was not merely aware that others were armed. He also acknowledged, with respect to Count 3, that he brandished a firearm during a robbery in Connecticut.

Judge Townes reaffirmed her acceptance of the plea and its factual basis.

## II.

28 U.S.C. § 2255 permits the Court "to vacate, set aside or correct" a sentence that was "imposed in violation of the Constitution or the laws of the United States, or. . .that. . . was in excess of the maximum authorized by

law." 28 U.S.C. § 2255(a). The Court may rule on a motion to vacate without a hearing if "the motion, the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

18 U.S.C. § 924(c) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime. . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall. . . be sentenced" to an additional penalty. In *United States v. Davis*, the United States Supreme Court affirmed the vacatur of a petitioner's § 924(c) conviction where the underlying conduct was a Hobbs Act Robbery. 139 S. Ct. at 2319.  In so doing, it held the phrase "crime of violence" as used in § 924(c)(1)(A) was unconstitutionally vague as applied to that conviction. *Id.* at 2336.

## III.

Tavarez argues that, under *Davis*, his conviction for Conspiracy to Commit Hobbs Act robbery is not a valid predicate for his § 924(c) conviction, and therefore that the latter conviction must be vacated. The Government concedes that Conspiracy to Commit Hobbs Act Robbery no longer qualifies as a "crime of violence." *See United States v. Barrett*, 937 F.3d 126, 127 (2d Cir. 2019) ("*Davis* precludes us from concluding. . . that. .

6

. Hobbs Act robbery conspiracy. . . qualifies as a § 924(c) crime of violence"). Nonetheless, the Government argues that Tavarez's conviction for Conspiracy to Distribute Heroin, Cocaine, MDMA and Marijuana is a "drug trafficking crime" that supports liability under § 924(c).

The Second Circuit has accepted theories like the Government's theory here on two occasions. First, in *United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016), the Second Circuit upheld a § 924(c) conviction based upon a Hobbs Act Robbery and a narcotics conspiracy predicate. *Id.* at 61. It reasoned that, because the defendant's co-conspirator had "discharged a firearm in furtherance of an agreement to rob drug dealers and to distribute any recovered narcotics and narcotics proceeds," there "was no possibility that the jury's verdict rested <u>only</u> on a Hobbs Act robbery predicate." *Id.* (underline emphasis in original). Rather, it held that "the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy [which] the jury found [to be] proved beyond a reasonable doubt." *Id.* It therefore affirmed based on § 924(c)'s "narcotics trafficking predicate." *Id. see also* 18 U.S.C. § 924(c); *United States v. Heyward*, 3 F.4th 75, 82 (2d Cir. 2021) ("narcotics conspiracy unquestionably satisfies § 924(c)").

Second, in *United States v. Rivera*, 679 F. App'x 51 (2d Cir. 2017), the Second Circuit upheld a § 924(c) conviction based upon a defendant's plea of guilty "to an indictment charging murder in the course of a robbery of narcotics and narcotics proceeds." *Id.* at 55 (internal citations and quotations omitted). In so doing, the Second Circuit explained that a petitioner's conviction under the drug trafficking predicate was adequately supported by his admission at a plea colloquy that "he was involved in a narcotics conspiracy wherein he had agreed to assist in committing a robbery of an individual delivering drugs, in the course of which a confederate used the gun to murder the person being robbed." *Id.* (cleaned up, internal quotations omitted).

Although both *Vasquez* and *Rivera* are non-precedential decisions, the Second Circuit recently found their reasoning to be "sound" in a precedential opinion. *See Heyward*, 3 F.4th at 83 (finding the "*Vasquez* principle" to be "sound. . . in general" but declining to apply it to the facts before the court). Accordingly, the Court models its own analysis on those cases and asks whether Tavarez's use of a gun during various robberies was "inextricably intertwined with, and indeed, in furtherance of [a] narcotics conspiracy," such that "there was no possibility" that Tavarez pled guilty "only [to] the Hobbs Act Robbery predicate." *Vasquez*, 672 F. App'x at 61.

## IV.

The record adequately supports a finding that Tavarez's participation
in various robberies and use of a firearm were "inextricably intertwined"
with his involvement in a narcotics conspiracy. At his plea colloquy,
Tavarez described his offense as "participating in the robbing of drug
dealers," from whom he and his co-conspirators would take "narcotics. . . or
money." Def. Ex. 1 at 45. When Judge Pohorelsky asked if he knew the
purpose of the robberies, he acknowledged that their purpose was to obtain
"narcotics and/or money," and that the stolen narcotics would be either "sold
or in some other way distributed." *Id.* at 45-6.

Because Tavarez has pled guilty to Count 2's narcotics conspiracy
charge, he is situated almost identically with the *Rivera* petitioner. *See* 679
F. App'x at 55 (noting that Rivera was "involved in a narcotics conspiracy
wherein he had agreed to assist in committing a robbery of an individual
delivering drugs, in the course of which a confederate used [a] gun"). Like
Rivera, Tavarez engaged in robberies "to obtain drugs" that were "sold or in
some way distributed." Def. Ex. 1 at 45-6. Tavarez's robberies were
therefore "inextricably intertwined with and, indeed, in furtherance of the
charged narcotics conspiracy." *Vasquez*, 672 F. App'x at 61.

Tavarez's arguments against this conclusion are unconvincing. First,
he makes much of the fact that Count 2's narcotics charge was not discussed

9

at his re-allocution before Judge Townes. This, he contends, is evidence that the Hobbs Robbery conspiracy in Count 1 is the true basis of his plea to Count 3. However, absent evidence that a defendant withdrew his plea, a re-allocution "supplement[s]"—and does not replace—the initial allocution. *Diaz v. United States*, No. 20-CV-2150, 2020 WL 2115349, at *5 (S.D.N.Y. May 4, 2020). Here, as in *Diaz*, "[t]here were two plea colloquies," but Tavarez "entered only one guilty plea" and declined to withdraw that plea when he was offered the opportunity to do so. *Id.* Consequently, the Court may consider *all of* Tavarez's statements, including those at the first colloquy, when determining the scope of the conduct he admitted. *See Rivera*, 679 F. App'x at 55-6 ("Because Rivera's own allocution provided the factual basis for the underlying narcotics offense, his. . . challenge fails") (citing *United States v. Robinson*, 799 F.3d 196, 199 (2d Cir. 2015) for the proposition that the Court may "accept a defendant's own admissions as true").

Second, Tavarez asks the Court to disregard *Rivera* because it "has only been cited three times by district courts, twice unfavorably." Def. Reply Br. at 3-4. *See, e.g.*, *United States v. Gyamfi*, 357 F. Supp. 3d 355, 360 (S.D.N.Y. 2019) ("*Rivera* is not a precedential decision, and even if it were. . . it does not control here"); *Camacho v. United States*, No. 13 CR 58

10

(AKH), 2019 WL 3838395, at *2 (S.D.N.Y. Aug. 15, 2019) ("The

Government cannot save Petitioner's § 924(c) conviction on a now-invalid

predicate by converting it to a valid predicate to which Petitioner did not

plead"); *cf. Forman v. United States*, No. 15 CR. 237 (PAC), 2017 WL

1434477, at *2 (S.D.N.Y. Apr. 20, 2017) (citing *Rivera* to support reliance

on a plea allocution to establish the elements of a § 924(c) offense). Tavarez

is correct that *Rivera* is not binding, but neither are the out-of-district cases

he cites. Moreover, none of Tavarez's cases were decided after the Second

Circuit's acknowledgement that the "principle" underlying *Vasquez* and

*Rivera* is "sound. . .in general." *Heyward*, 3 F.4th at 83. Faced with the

choice between circuit precedent and a handful of district court cases, the

Court defers to the former.

     Finally, and despite Tavarez's failure to raise this argument,[1] the

Court holds that its application of *Rivera* and denial of relief are consistent

with *Heyward*'s substantive holding. In *Heyward*, the Second Circuit

rejected the application of the "*Vasquez* principle" to—and reversed a §

924(c) conviction in—a case where a petitioner was charged with

racketeering conspiracy, conspiring to distribute narcotics, and "possessing

---

[1] Because Tavarez's briefs were filed in 2019, and *Heyward* was not decided until
June of this year, Tavarez's counsel cannot be faulted for failing to cite *Heyward*.
*See* 3 F.4th at 75 (showing decision date of June 28, 2021).

or aiding and abetting the possession of firearms in furtherance of *either* the racketeering conspiracy or the narcotics conspiracy." *Heyward*, 3 F.4th at 77 (emphasis in original).

Superficially, *Heyward* resembles the matter before the Court since Judge Pohorelsky's explanation of Count 3 includes the same "disjunctive" language as the *Heyward* indictment. *Compare Heyward*, 3 F.4th at 77 *with* Def. Ex. 1 at 29 (to prove Count 3, the Government must show "in connection with *either* the crime charged in Count 1 or the crime charged in Count 2, or both, firearms were used and carried by one or more participants in those offenses") (emphasis added). However, this similarity does not compel vacatur of Tavarez's conviction, because *Heyward* is distinguishable in two crucial respects. First, in *Heyward*, the Second Circuit refused to apply *Vasquez* and *Rivera* because it believed the "record reveal[ed] a distinct factual separation between the gang violence [which underlay the racketeering count], and [the gang's] charged narcotics activity." *Heyward*, 3 F.4th at 83. Thus, "when Heyward accidentally shot [his victim], it was in the context of an altercation. . . that a jury could reasonably conclude was unrelated to the procurement or distribution of drugs," and the other incidents of firearms use in *Heyward* were likewise attributable to "gang violence [namely a vendetta and gang war with the Bloods] that a jury

12

reasonably could find was separate from any narcotics activity." *Id.* By contrast, Tavarez's conviction was supported by several statements indicating that the purpose of his robberies was to obtain, resell, and profit from narcotics. *See* Def. Ex. 1 at 45-6. Assuming, as it must, that Tavarez testified truly at both colloquies, the Court cannot say that a reasonable juror would find "a distinct factual separation" between Tavarez's robberies and the narcotics conspiracy. *Cf. Heyward*, 3 F.4th at 83.

Second, *Heyward* came before the Second Circuit after a jury trial, in which the jury entered a special verdict. *Id.* at 80. On the special verdict form, the jury was asked whether "a firearm possessed or used during or in furtherance of the narcotics conspiracy was discharged," and whether "a firearm possessed or used during or in furtherance of the racketeering conspiracy was discharged." *Id.* It answered that the former allegation was "not proven," but that the latter was "proven," and it entered a guilty verdict on the § 924(c) charge. *Id.* While the verdict form is not dispositive proof that no firearm was "possessed or used. . .in furtherance of the narcotics conspiracy" (a gun can be "possessed" without being "discharged"), it strongly supports an inference that the weapons in *Heyward* were possessed in furtherance of racketeering, not drug trafficking. *See id.* at 85 (discussing verdict form). By contrast, this Court has no evidence to suggest that anyone

13

believed Tavarez's robberies and weapons-use were unconnected to drug trafficking. *See United States v. Lewter*, 402 F.3d 319, 322 (2d Cir. 2005) (holding that the nexus between a firearms offense and drug-trafficking crime is sufficient if the "gun afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug-trafficking").

## CONCLUSION

For the foregoing reasons, Tavarez's motion to vacate his conviction on Count 3 of the Superseding Indictment is **DENIED**.

As Tavarez has not "made a substantial showing of the denial of a constitutional right," a certificate of appealability will not issue. 28 U.S.C. §2253(c). The Clerk of Court is **DIRECTED** to close Civil Action No. 1:16-CV-3884 (FB).

**SO ORDERED.**

_/S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 24, 2021